IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

NATHANIEL SANDERS                                                                PETITIONER

v.                                    NO. 2:06CV00025 HDY

LINDA SANDERS, Warden, FCI                                              RESPONDENT
Forrest City, Arkansas

## MEMORANDUM OPINION AND ORDER

BACKGROUND. It appears that sometime in 2004, petitioner Nathaniel Sanders ("Sanders") was sentenced to a thirty-seven month term of imprisonment in the custody of the Federal Bureau of Prisons ("BOP") following his conviction of being a felon in possession of a firearm. He eventually came to be incarcerated at the Federal Correctional Institution-Low in Forrest City, Arkansas.

FEDERAL COURT SUBMISSIONS. In January of 2006, Sanders commenced the proceeding at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2241. He alleged the following in his petition:

> Petitioner is not tentatively scheduled for transfer to a CCC. However, Petitioner is requesting that he be permitted to spend a minimum of six months in CCC placement. Petitioner has cited to respondent that he will have no resources upon his release, and that he will need time to develop employment and other community ties, and to truly re-establish himself in his respective community.

> Respondent has denied his request citing a new Bureau of Prisons policy ... which took effect on February 15, 2005, whereas, [prisoners] will only be permitted to serve the final ten [percent] of their sentences in a CCC, without regard to their needs and individual circumstances.

See Document 1 at 2-3.  Sanders maintained that the new community corrections center placement policy ("the February 14, 2005, CCC placement policy") is an erroneous interpretation of 18 U.S.C. 3624(c) because the policy is contrary to Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004), and because the policy violates the Ex Post Facto Clause of the United States Constitution.  He asked that the policy be invalidated and the BOP be ordered to transfer him to a CCC for the final six months of his sentence.

Respondent Linda Sanders ("Respondent") filed a response to the petition.  In the response, she advanced the same positions she advanced in several earlier proceedings, i.e., the BOP has the discretion to designate a prisoner's place of incarceration and the February 14, 2005, CCC placement policy is consistent with, and a permissible interpretation of, the relevant statutes and case law.  She also advanced the following:

> In this case, an additional factor is involved regarding Petitioner's possible CCC placement.  Petitioner's projected release date is May 28, 2007. ...  Under Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure, CCC referral procedures state that normally 11 to 13 months before each inmate's probable release date, the unit team shall decide whether to refer an inmate to a Community Corrections program.  Id.  This time frame allows staff to possess information regarding his institutional adjustment, compliance with the financial responsibility program, discipline history and other factors used in determining CCC placement.  Any final decision regarding CCC placement would be premature at this time.

See Document 4 at 2. Respondent accompanied her response to the petition with a declaration signed by James D. Crook ("Crook"), the Supervisory Attorney at the BOP Consolidated Legal Center in Oklahoma City, Oklahoma. His sworn declaration provided, in part, the following:

> Petitioner's projected release date is May 26, 2007, via good conduct time. [Citation omitted].
>
> Normally 11 to 13 months before each inmate's probable release date, the unit team shall decide whether to refer an inmate to a Community Corrections program. [Citation omitted].
>
> At this time, Petitioner has not completed the required release preparation program. [Citation omitted].

See Declaration of James D. Crook at 1-2.[1]

EXHAUSTION. Before addressing Sanders' petition, the Court makes note of one matter. A prisoner is typically required to exhaust his administrative remedies before filing a petition pursuant to 28 U.S.C. 2241. See United States v. Chappel, 208 F.3d 1069 (8th Cir. 2000). The requirement is capable of being waived, though, when a prisoner can show that attempting to exhaust would be futile. The Court finds that requiring Sanders to exhaust would be futile, primarily because the BOP has taken a clear, consistent, and widespread stand against the positions advanced by Sanders.

---

[1] Crook joined his declaration with two documents: (1) an inmate profile of Sanders maintained by the BOP, and (2) a copy of BOP Program Statement 7310.04.

BOP POLICY CHANGES AND RESULTING LITIGATION. Turning to address the proceeding at bar, it is best understood when placed in a larger context, a context that involves at least two changes to the BOP's CCC placement policy. Prior to December of 2002, the BOP had a policy of "allowing [a] prisoner[] to serve [the] last six months of incarceration in a CCC regardless of what percent of the sentence this six months comprised." See Elwood v. Jeter, 386 F.3d 842, 844 (8th Cir. 2004). This policy was particularly favorable to a prisoner with a relatively short sentence because it allowed the prisoner to serve a significant portion of his sentence in a CCC.

In December of 2002, the Department of Justice's Office of Legal Council ("OLC") issued a memorandum opinion that provided, in part, the following: "[w]hen [a prisoner] has received a sentence of imprisonment, the [BOP] does not have general authority ... to place such [prisoner] in community confinement at the outset of his sentence or to transfer him from prison to community confinement at any time [the] BOP chooses during the course of his sentence." See Cohn v. Federal Bureau of Prisons, 2004 WL 240570 at 1 (S.D.N.Y. 2004). "[The] OLC [therefore] concluded that [the] BOP could no longer place [a prisoner] in [a CCC] to satisfy a prison term, except that, pursuant to 18 U.S.C. § 3624(c), [the] BOP could do so at the end of [a prisoner's] sentence for the lesser of (i) the last ten percent of the sentence or (ii) six months." See Cato v. Menifee, 2003 WL 22725524 at 1 (S.D.N.Y. 2003). [Emphasis in original]. Shortly thereafter, the BOP announced that it would adhere to the OLC's memorandum opinion.

The United States Court of Appeals for the Eighth Circuit addressed the OLC's memorandum opinion and the BOP's application of the memorandum opinion in <u>Elwood v. Jeter</u>. In that decision, the Court of Appeals determined that the OLC's memorandum opinion was erroneous and that the BOP has the discretion to place a prisoner in a CCC at any time during his incarceration. The Court of Appeals determined that the BOP is not limited by the provisions of 18 U.S.C. 3624(c); instead, that statute imposes a duty on the BOP to take steps to facilitate a prisoner's re-entry into the outside world. That duty, though, was not to extend beyond the last six months of the prisoner's sentence.

In response to <u>Elwood v. Jeter</u>, the BOP adopted a new CCC placement policy on February 14, 2005. The relevant portions of the policy provided as follows:

> 570.20.  What is the purpose of this subpart?
>
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
>
> 570.21.  When will the Bureau designate inmates to community confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

>    (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority ...

The BOP thus acknowledged in the policy that it had the discretion to place a prisoner in a CCC prior to the last ten percent of the sentence being served. The policy reflects, however, that the BOP would exercise its discretion, in advance, by limiting CCC confinement in every instance to the last ten percent of the sentence being served.

The February 14, 2005, CCC placement policy spawned much litigation, including a considerable amount within this judicial district. In July of 2005, United States District Judge George Howard, Jr., addressed a challenge to the policy in <u>Fults v. Sanders</u>, 2:05CV00091. He found that the policy was invalid because although it purported to be a "categorical exercise of discretion," it was actually not. "It merely repackaged the December 2002 blanket rule that was rejected in <u>Elwood</u>." <u>See</u> <u>Fults v. Sanders</u>, 2:05CV00091, Document 6 at 8.

The undersigned has also had several occasions to address the February 14, 2005, CCC placement policy. The undersigned has followed Judge Howard's lead in every instance and found the policy invalid. But for the "additional factor" advanced by Respondent, <u>i.e.</u>, "[a]ny final decision regarding CCC placement would be premature at this time," <u>see</u> Document 4 at 2, the undersigned would do likewise in this instance. The "additional factor," though, compels the undersigned to deny and dismiss Sanders' petition as premature and not reach the claims advanced in his petition.

-6-

<u>THE "ADDITIONAL FACTOR."</u>  A preliminary consideration in any proceeding is whether the complaining party has standing to challenge the action, or inaction, of the non-complaining party.  With regard to the doctrine of standing, the United States Court of Appeals for the Eighth Circuit opined the following:

> The doctrine of standing [footnote omitted] embodies both constitutional and prudential limits.
>
> [T]he irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact" . . .  Second, there must be a casual connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant" . . .  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

<u>Sierra Club v. Robertson</u>, 28 F.3d 753, 757-58 (8th Cir. 1994) (other citations omitted).[2]

In this instance, Sanders can show no injury-in-fact and thus has no standing to challenge the February 14, 2005, CCC placement policy.  He has not completed the required release preparation program, and the February 14, 2005, CCC placement policy has not yet been applied to him.  Thus, his petition is premature.[3]

---

[2] The "injury in fact" element requires a showing of "'an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" <u>Id</u>. at 758 [quoting <u>Lujan v. Defenders of Wildlife</u>, --- U.S. ---, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)].

[3] Sanders may, however, re-file his petition if he completes the required release preparation program and the February 14, 2005, CCC placement policy is applied to him.

CONCLUSION. On the basis of the foregoing, Sanders' petition for writ of habeas corpus is denied and dismissed. All requested relief is denied.

IT IS SO ORDERED this __21__ day of March, 2006.

*H Daniel Young*
_____
UNITED STATES MAGISTRATE JUDGE